

ENTERED
10/21/2016

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 15-50120 |
| THOMAS A LAMONT | § | CHAPTER 11 |
| | § | |
| Debtor(s). | § | DAVID R. JONES |
| | § | |
| | § | |
| VAQUILLAS ENERGY LOPENO, LTD., LLP, *et al* | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | ADVERSARY NO. 15-5002 |
| | § | |
| THOMAS A LAMONT | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION
(Docket No. 9)

Vaquillas Energy Lopeno, Ltd., LLP ("Vaquillas") and Job Energy Partners II, Ltd. ("Job") seek summary judgment holding their claims excepted from the Debtor's discharge based on a previously entered state court judgment. For the reasons set forth below, the Court grants the motion and holds that Vaquillas' and Job's claims against the Debtor are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

### Background

In January, 2008, Vaquillas and Job sued the Debtor and others asserting claims for misappropriation of trade secrets, intentional interference with contracts, and civil conspiracy in Cause No. 2008-CVF-000353-D1 in the 49th District Court of Webb County, Texas (the "State Court"). *First Amended Petition, Plaintiffs' Exhibit 2, Appendix page 19.*

The Debtor filed an answer and actively participated in the litigation. *Answer, Plaintiffs' Exhibit 2, Appendix page 37.* A jury trial was held in the summer of 2010. The Debtor was represented by counsel and testified at the trial. The jury returned a verdict in favor of Vaquillas and Job. *Plaintiffs' Exhibit 2, Appendix page 51.* On January 19, 2012, the State Court entered judgment against the Debtor and his co-defendants, jointly and severally (the "Judgment"). *Plaintiffs' Exhibit 2, Appendix page 66.* The Judgment awarded (i) compensatory damages of $2,800,000 to Vaquillas; (ii) compensatory damages of $2,100,000 to Job; (iii) interest and court costs to both plaintiffs.

The Debtor appealed the Judgment to the Court of Appeals for the Fourth Supreme Judicial District of Texas at San Antonio (the "Fourth Court of Appeals") under Appeal No. 04-12-00219-CV. The Fourth Court of Appeals subsequently affirmed the trial court's judgment. *Plaintiffs' Exhibit 2, Appendix page 70*. The Debtor's petition for review by the Texas Supreme Court was denied. *Plaintiffs' Exhibit 2, Appendix page 100*. On June 9, 2015, the final mandate issued affirming the Judgment. *Plaintiffs' Exhibit 2, Appendix page 102*.

The Debtor commenced a chapter 11 case on August 14, 2015. *Case No. 15-50120, Docket No. 1*. Vaquillas and Job filed this adversary proceeding on October 8, 2015 seeking to have their claims under the Judgment declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). *Complaint, Docket No. 1*. Vaquillas and Job filed their motion for summary judgment on December 2, 2015. *Docket No. 9*. The Debtor filed his opposition to the motion on January 6, 2016. *Docket No. 11*. Vaquillas and Job filed their reply on January 11, 2016. *Docket No. 12*. The Court conducted a hearing on the motion on April 1, 2016 and took the matter under advisement.

On May 1, 2016, the underlying bankruptcy case and all related proceedings were transferred to the then newly-appointed Judge Rodriguez under General Order 2016-2. Because of the undersigned's familiarity with the history of this case, Judge Rodriguez reassigned the case to the undersigned judge on May 9, 2016.

## **Summary Judgment Standard**

Summary judgment should be granted "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Gray Law LLP v. Transcon. Ins. Co.*, 560 F.3d 361, 365 (5th Cir. 2009). Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings. A party seeking summary judgment bears the burden to demonstrate the absence of (i) evidence to support the non-moving party's claims; or (ii) a genuine issue of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine issue of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). The court reviews the facts and evidence in the light most favorable to the non-moving party. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009).

## **Issues Presented**

The parties dispute the effect of the Judgment. Vaquillas and Job assert that the jury's findings and the Judgment conclusively establish all of the required elements under 11 U.S.C. § 523(a)(6) and that the Debtor is collaterally estopped from taking a contrary position. The Debtor argues that the Judgment did not conclusively address all of the required elements of § 523(a)(6) and therefore a material fact issue exists and summary judgment is inappropriate. The issues before the Court are whether (i) the jury's findings and the Judgment are sufficient to establish an exception under 11 U.S.C. § 523(a)(6); and (ii) collateral estoppel applies.

**Section 523(a)(6)**

The exceptions to a bankruptcy discharge are set forth in § 523(a) and are narrowly construed in the debtor's favor. *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998). To prevail, Vaquillas and Job must establish each of the requisite elements by a preponderance of the evidence. Section 523(a)(6) of the Bankruptcy Code provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt...
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

11 U.S.C. § 523(a)(6). To except a debt from discharge under § 523(a)(6), a party must show: (1) the debtor injured the party or its property; (2) the debtor's actions were willful; and (3) the debtor's actions were malicious. *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 269 (5th Cir. 2005). The Supreme Court has instructed that the word "willful," as used in § 523(a)(6), "modifies the word 'injury,' indicating that nondischargeability under that section requires 'a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury.'" *In re Bradley,* 466 B.R. 582, 587 (1st Cir. BAP 2012) (quoting *Kawaauhau v. Geiger,* 523 U.S. 57, 61-62 (1998)). Vaquillas and Job need not prove, however, that the Debtor undertook an action with the primary motive to cause harm. Rather, the Fifth Circuit uses an implied malice standard for § 523(a)(6). The requirement of "willful and malicious" is satisfied when there has been an intentional act with either: (1) an objective substantial certainty of harm arising from the act; or (2) a subjective motive to cause harm by a party taking the act. *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 605-06 (5th Cir. 1998).

The United States Supreme Court has explained, "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." *Geiger,* 523 U.S. at 61. For example, a claim arising out of a car accident, without more, will fail as a matter of law to establish that a party caused a "willful and malicious injury" for purposes of § 523(a)(6). Parties asserting claims under § 523(a)(6) must show that they or their property were damaged by the debtor while engaged in conduct that either was designed to harm or from which there was substantial certainty that harm would result. *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 509 (5th Cir. 2003); *Miller,* 156 F.3d at 603.

**Collateral Estoppel**

Vaquillas and Job assert that summary judgment is appropriate because the Debtor is collaterally estopped from relitigating the jury's findings and the Judgment. While this Court has exclusive jurisdiction to determine the dischargeability of a particular debt under 11 U.S.C. § 523, collateral estoppel may bar the relitigation of issues relevant to dischargeability. *In re Gober*, 100 F.3d 1195, 1201 (5th Cir. 1996). A bankruptcy court may grant summary judgment in a non-dischargeability case based on the collateral estoppel effect of a state court judgment. *Raspanti v. Keaty*, 397 F.3d 264, 270 (5th Cir. 2005); *Garner v. Lehrer (In re Garner)*, 56 F.3d 677, 680-81 (5th Cir. 1995).

When determining the preclusive effect of issues determined in a prior state court proceeding, bankruptcy courts apply the issue preclusion rules of the state in which the state court proceeding was held. *Miller*, 156 F.3d at 598 (citing *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996)); *In re King*, 103 F.3d 17, 19 n.2 (5th Cir. 1997). In this case, the Judgment was entered by a Texas court, thus Texas issue preclusion rules apply.

Under Texas law, issue preclusion applies where "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Tex. Dep't of Pub. Safety v. Petta*, 33 S.W.3d 575, 479 (Tex. 2001). To apply issue preclusion offensively, Texas law requires courts to consider the following factors set forth in the Supreme Court's decision in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 332, 329-31 (1979):

> (a) whether the plaintiff took a "wait and see" approach instead of joining in the prior litigation;
>
> (b) whether the defendant in the first action was sued for small or nominal damages, generating little incentive to defend vigorously, particularly if future suits are not foreseeable;
>
> (c) whether the judgment relied upon as the basis for estoppel is inconsistent with previous judgments in favor of the defendant; and
>
> (d) whether the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.

*Goldstein v. Comm'n for LawyerDiscipline*, 109 S.W.3d 810, 813 (Tex. App.–Dallas 2003, pet. denied); *Yarborough's Dirt Pit v. Turner*, 65 S.W.3d 210, 216 (Tex. App.–Beaumont 2001, no pet.).

The Judgment was obtained after discovery, pre-trial proceedings, and a jury trial. There is no indication of a "wait and see" approach by the Debtor. The State Court record and Fourth Court of Appeals' opinion indicates the Debtor vigorously defended the case with the assistance of counsel through a jury trial and two appeals. There are no other proceedings and no inconsistent prior judgments. This adversary proceeding affords no additional procedural opportunities to the Debtor that were previously unavailable that could readily cause a different result. There is no indication that the Debtor was stripped of any due process rights. Section 523 actions are not intended to provide a proverbial "second bite at the apple." The *Parklane Hosiery's* factors overwhelmingly support application of issue preclusion.

Finally, the Court must determine if public policy supports the application of collateral estoppel. This Court is mindful of the importance of providing a debtor in bankruptcy a "fresh start." The impact of a non-dischargeability finding under § 523 is severe. Therefore, it is only with the greatest caution that this Court will make such a determination, particularly on a summary basis.

Vaquillas and Job could not have objected to the Debtor's discharge in the state court litigation. The Debtor had not yet filed for bankruptcy, and state courts lack jurisdiction to

determine the dischargeability of a particular debt in bankruptcy. The facts necessary to determine dischargeability were necessarily litigated in the Lawsuit and specific findings were made by the jury. Those findings formed the basis of the Judgement which was affirmed on appeal. The state court record is extensive. *See Plaintiffs' Exhibits 2-10, Appendix pgs. 19-955*. There is no assertion the Debtor was denied his day in court. The Court finds no public policy reason to ignore the findings of the state court jury. The Court finds that collateral estoppel applies. Having made this finding, the Court must next decide if the state court jury's findings and the Judgment establish a claim for non-dischargeability under 11 U.S.C. § 523(a)(6).

## Analysis

The Debtor asserts summary judgment based on collateral estoppel is not appropriate because the required elements of § 523(a)(6) are not identical to the state court jury's findings. The Debtor cites to *In re King* which states that

> issue preclusion will prevent a bankruptcy court from determining dischargeability issues for itself only if "the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question . . . and the facts supporting the court's findings are discernible from that court's record." *In re Dennis*, 25 F.3d 274, 278 (5th Cir. 1994) (citations omitted), cert. denied, 513 U.S. 108, 115 S.Ct. 732, 130 L.Ed.2d 636 (1995).

*In re King*, 103 F.3d 17, 19 (5th Cir. 1997). This language, standing alone, suggests that a cause of action must be absolutely identical in every way to § 523. However, the *King* quotation of *Dennis* is incomplete. The entire paragraph in *Dennis* states

> Collateral estoppel applies in a bankruptcy case only if, *inter alia*, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question – <u>that is, an issue which encompasses the same *prima* facie elements as the bankruptcy issue</u> - and the facts supporting the court's findings are discernible from that court's record. [emphasis supplied].

*Dennis*, at 278. *Dennis* held that a bankruptcy court should not rely solely on state court judgments in determining the true *nature* of a debt for dischargeability purposes. *Id*. The applicable facts of *Dennis* are illustrative of this notion.

In *Dennis*, the Court evaluated a divorce decree to determine whether the property awarded by a state court to a non-debtor spouse was a non-dischargeable obligation. The Court put aside decretal language in the state court judgment to determine whether the debt at issue was in the nature of support as opposed to a property settlement. *Id*. at 279. The question of the nature of the obligation–support versus a property settlement—is exclusive to a bankruptcy court. Thus, the elements of § 523 would not have been presented to, or decided by, the state court in dividing the marital estate. Put another way, no analogous action existed in the state court that would result in an evaluation of the elements necessary to determine whether an obligation is in the nature of support (non-dischargeable) versus a property settlement (perhaps dischargeable). In *Dennis*, collateral estoppel was properly not applied because the issues addressed in the state court did not encompass the same *prima facie* elements.

5 / 8

However, if the resolution of the state court litigation requires the determination of the same elements that a bankruptcy court would examine to determine dischargeability, collateral estoppel may apply. "An issue may be 'actually' decided even if it is not *explicitly* decided, for it may have constituted, logically or practically, a necessary component of the decision reached in the prior litigation." *O'Rorke v. Porcaro*, 545 B.R. 384, 399-400 (1st Cir. BAP 2016); *In re Harper*, 378 B.R. 836, 849 (Bankr. E.D. Ark. 2007) (*quoting In re Smith*, 270 B.R. 544, 548 (D. Mass. 2001)).

Vaquillas and Job sued the Debtor for misappropriation of a trade secret, tortious interference and civil conspiracy. In simplistic terms, Vaquillas and Job alleged that the Debtor stole their proprietary seismic data and used the data to obtain an oil and gas lease and drill wells on adjacent property. The jury charge sets out the causes of action and elements considered by the state court jury. *Exhibit 2, Appendix at 51-65*. Jury Question No. 1 asked if the Debtor misappropriated Plaintiffs' trade secret. The jury answered "yes." *Exhibit 2, Appendix at 55-56*. The jury was instructed in Jury Question No. 1 that misappropriation" occurs when (a) the plaintiff owns a trade secret, (b) the defendant acquires knowledge of the secret by improper means; and (c) the defendant commercially used, or disclosed, the trade secret without the plaintiff's permission. A person discovers another's trade secret through "improper means" by acting below generally accepted standards of commercial morality and reasonable conduct. *Exhibit 2, Appendix at 55-56*. The jury found the Debtor acquired knowledge of the trade secret by improper means, and that he commercially used, or disclosed, the trade secret without permission.

Jury Question No. 2 asked if the Debtor intentionally interfered with contracts that were the Plaintiff's property. The jury answered "yes". *Exhibit 2, Appendix at 57*. The jury was instructed that interference is intentional if committed with the desire to interfere with the contracts or with the belief that interference was substantially certain to result. Jury Question No. 3 asked if the Debtor interfered with the contracts because of a good faith belief that he had a right to do so. The jury answered "no." Jury Question No. 4 asked about damages proximately caused by the conduct which the jury found either from misappropriation of the trade secret or interference with the PGAs. The jury found the Debtor's conduct proximately caused Vaquillas to lose $2.8 million in profits and caused JOB to lose $2.1 million in profits. *Exhibit 2, Appendix at 60*. Jury Question No. 9 asked if the Debtor was part of a conspiracy that damaged Vaquillas and Job. The jury answered "yes." *Exhibit 2, Appendix at 64*. The jury was instructed that "[t]o be part of a conspiracy, at least two or more of the defendants . . . must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in the damages to one or both of Vaquillas and Job." *Id.*

The Debtor does not dispute the existence of an injury to Vaquillas and Job. Rather, the Debtor advances two alternative arguments. First, the Debtor argues that summary judgment is inappropriate because, although the jury found substantial certainty of interference, it did not expressly find substantially certainty of harm. In support of the argument, the Debtor cites to *In re Midway Collections, Inc. v. Graff (In re Graff),* 475 B.R. 770 (Bankr. E.D. Tex. 2012).

In *Graff*, the debtor left the employment of the plaintiff to work for a competitor. The debtor took a list of clients and began to solicit them in violation of his agreement with the plaintiff. The prior employer sued the debtor and the new employer for breach of the

employment agreement, tortious interference and conspiracy and obtained a judgment against both parties. The debtor then filed a bankruptcy case. The prior employer sought to have the judgment declared non-dischargeable under §§ 523(a)(4) and (a)(6). In response to a motion for summary judgment, the debtor argued that while the jury found a substantial certainty of interference, there was no express finding of a substantial certainty of harm from that interference. Further, the debtor pointed out that while the jury found him liable, it specifically found that he had not acted with malice. Judge Parker denied the motion for summary judgment finding that the state court did not determine that there was a substantial certainty of harm.

The Court agrees with Judge Parker's analysis in *Graff*. This case, however, lacks the specific finding made by the jury in *Graff* that no malice existed. Another critical difference is the nature of the harm. In evaluating a state court judgment for purposes of collateral estoppel in the context of a non-dischargeability case, the court may examine the evidentiary record. *Simpson & Co. v. Shuler (In re Shuler),* 722 F.2d 1253, 1257-58 (5th Cir. 1984); *Sierra Inv. Assoc. v. Tomlin (In re Tomlin),* 2005 WL 6440629, at *5 (Bankr. N.D.Tex., Dec. 20, 2005) (*citing Dennis,* 25 F.3d at 278). In this case, the Debtor misappropriated valuable seismic data and then negotiated a lease on adjoining property to the exclusion of Vaquillas and Job. It is not lost on the Court that the Debtor actively competed against Vaquillas and Job for this lease and paid a $1 million bonus to obtain the lease. The Debtor then drilled multiple wells into the same hydrocarbon reservoir being produced by Vaquillas and Job. Much like two straws in the same milkshake, what is taken by one is necessarily to the exclusion of the other. Under these facts, the Court finds the existence of an objective substantial certainty of harm resulting from the Debtor's wrongful acts.

The Debtor's second argument is that summary judgment is inappropriate because the damages were not allocated between the misappropriation claim and the interference claim. The Debtor asserts that if the damages were all attributable to the misappropriation claim, the entirety of the claim would be dischargeable as the relevant jury question makes no reference to intent. Without context, the foregoing statement would seem to be supported by *Miller*. Under the facts presented in this case, however, the Court disagrees. The jury contemplated the entirety of the Defendant's conduct. The conspiracy finding ties each of the specific acts into the other.

The jury's findings and the state court record conclusively establish each of the elements of 11 U.S.C. § 523(a)(6). Notwithstanding the Court's previously expressed concern about the impact of a non-dischargeability finding on the Debtor, the Court cannot conceive of a course of action in this adversary proceeding that would not involve at its core, the reevaluation of the jury's findings. Absent the existence of extenuating circumstances not present in this case, a bankruptcy court may not sit as an appellate court and revisit the merits of a case tried in the state court. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under the *Rooker-Feldman* doctrine, a federal court lacks "jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994).

**Conclusion**

For the reasons set forth above, the Court grants the motion for summary judgment. The claims of Vaquillas and Job under the Judgment are non-dischargeable under 11 U.S.C. § 523(a)(6). A separate judgment consistent with this Memorandum Opinion will issue.

**SIGNED: October 21, 2016.**

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE